FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

2015 DEC -2  PM 1:31

CLERK ᴜ.ꜱ. ᴅɪꜱᴛʀɪᴄᴛ ᴄᴏᴜʀᴛ
WESTERN DISTRICT OF TEXAS
BY._____
                    DEPUTY

**WILLIAM O. HUGGINS, III,**
                    **Plaintiff,**

-vs-                                    **Case No.  A-14-CA-1058-SS**

**ROYALTY CLEARINGHOUSE, LTD.,**
                    **Defendant.**

_____

### O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Royalty Clearinghouse, Ltd.'s Motion for Attorney's Fees [#44]. No response was filed. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case arose from an oil and gas transaction between *pro se* Plaintiff William O. Huggins, III, and Defendant Royalty Clearinghouse, Ltd. (RCH), an oil and gas property management and acquisition company. In November 2007, Huggins executed a deed conveying to RCH all of his interest in the oil, gas, other minerals,[1] and associated royalties produced from "[a]ll of the lots, tracts, or parcels of land owned by [Huggins] in the Alfred Kennon Survey, A-32, Burleson County, Texas." *See* Order of July 31, 2015 [#35] at 3. Subsequently, EnerVest, the company then operating the three units encompassing the Burleson County land, sent Huggins and RCH an incorrect transfer order showing Huggins had transferred only half, not all, of his royalty interest in the land via the

_____

[1] Save a one-half interest in hard-core minerals. *See* Def.'s Mot. Summ. J. [#30-2] Ex. A-2 (Deed) at 2.

deed. Nevertheless, both Huggins and RCH signed the incorrect transfer order, and Huggins began erroneously receiving half-interest royalty payments on production from the units.

In September 2008, RCH asked Huggins for reimbursement of the November and December 2007 half-interest royalty payments (yet, oddly, did not ask for reimbursement of amounts paid in any other months, or attempt to correct the erroneous transfer order). Through May 2009, Huggins and RCH sporadically corresponded regarding the November and December 2007 royalties, but Huggins never reimbursed RCH. After May 2009, RCH apparently stopped pursuing the matter. Huggins continued to receive royalty payments on two of the units until they ceased producing in 2010 and 2012, respectively; he was still receiving royalty payments on the third unit, the Yegua-Yegua unit, at the time he filed this action in November 2014. Quixotically, in August 2013 and again in September 2014, RCH sent Huggins letters offering to purchase "his" one-half royalty interest in the Yegua-Yegua unit. Finally, in September and October 2014, RCH and Huggins both leased their interests in the other two units to an exploration company.

Huggins filed suit against RCH on November 21, 2014, bringing claims for (1) "voidance of deed for insufficient property description in violation of the statute of frauds"; (2) reformation; (3) quiet title; (4) "adverse possession pursuant to the 3 year statute of limitation"; (5) "adverse possession due to the 5 year statute of limitation"; (6) ratification; (7) "termination of royalty interest held by RCH by operation of law"; (8) unjust enrichment; and (9) breach of the covenant of good faith and fair dealing. *See* First Am. Compl. [#18] ¶¶ 47–55. RCH answered and asserted counterclaims against Huggins for breach of contract and, in the alternative, unjust enrichment. *See* Answer & Countercls. [#26] at 11.

On April 24, 2015, Huggins filed a motion for partial summary judgment, arguing the deed evidencing his transaction with RCH violated the statute of frauds and was voidable as a matter of law. *See* Pl.'s Mot. Summ. J. [#24] at 1. RCH filed a cross-motion for summary judgment on both Huggins's claims and its own counterclaims on May 15, 2015. *See* Def.'s Mot. Summ. J. [#30] at 1. The Court held a hearing on the cross-motions on May 29, 2015.

Following hearing, on July 31, 2015, the Court entered an order denying Huggins's motion for partial summary judgment, dismissing RCH's counterclaim for breach of contract, and granting RCH's motion for summary judgment in all other respects. *See* Order of July 31, 2015 [#35] at 19. The Court found Huggins's myriad claims lacked any basis in law, and further opined his suit against RCH was "little more than a disingenuous attempt to capitalize on an administrative error." *Id.*

The Court rendered final judgment in this case on August 14, 2015. *See* Final J. [#43]. In that judgment, the Court ordered Huggins to pay RCH $27,657.69, the amount of royalties Huggins erroneously received on the units from November 2007 through December 2014, plus pre- and post-judgment interest. *See id.* at 2–3. The instant motion for attorney's fees followed.

## Analysis

RCH now requests Huggins be charged with $121,668.70 in attorney's fees, as RCH prevailed on its unjust enrichment claim against Huggins. As this is a diversity case, state rules concerning attorney's fees apply. *Atl. Richfield Co. v. Manges*, 702 F.2d 85, 87 (5th Cir. 1983) (citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 250, 259 n.31 (1975)). Under Texas law, courts will grant attorney's fees from an opposing party where a statute authorizes such recovery or an agreement between the parties provides for it. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 165

(Tex. App.—El Paso 1997, no writ) (citations omitted).  Any award of fees is within the discretion of the trial court.  *Id.* (citations omitted).

Texas Civil Practice and Remedies Code § 38.001 authorizes recovery of attorney's fees in the types of suits listed, including suits where "the claim is for . . . an oral or written contract."  TEX. CIV. PRAC. & REM. CODE § 38.001(8).  Unjust enrichment, however, does not sound in contract: rather, it "give[s] rise to an implied or quasi-contractual obligation to return the benefits."  *Amoco*, 946 S.W.2d at 164, 166.

In *Amoco Products Co. v. Smith*, a Texas appellate court upheld a trial court's refusal to award attorney's fees under § 38.001(8) to an oil and gas production company that prevailed on an unjust enrichment claim seeking recovery of royalty overpayments, reasoning that "an implied contract is a legal fiction and not a true contractual obligation at all."  *Id.* at 166.  The *Amoco* court also recognized, however, that a fee award under § 38.001(8) in an unjust enrichment action "may under some circumstances be appropriate," but stated any such award would be "within the discretion of the trial court."  *Id.* at 166.

RCH directs the Court to the Texas Supreme Court's decision in *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986), for the proposition it may recover its fees under § 38.001.  *Gavenda* differs somewhat from this case on its facts: in *Gavenda*, an oil and gas operator prepared incorrect division and transfer orders which erroneously underpaid the royalty owners, and the operator kept part of the underpayment.  *Id.* at 692–93.  The Texas Supreme Court held the operator was liable to the royalty owners for the amount of the underpayment it retained for itself, and the royalty owners moved for attorney's fees under the predecessor statute to § 38.001.  *See id.* at 693.  The Court noted that fees "are recoverable in suits for royalty payments owed under oil and gas

-4-

leases," and without elaboration, held the royalty owners could recover their fees "[b]ecause we see no distinction between allowing attorney's fees on underpaid royalty suits based on leases and those based on deed reservations." *Id.*

Based on all of the above, the Court concludes it may exercise its discretion to award RCH fees under § 38.001(8). However, considering the time and labor required by this action, the amount of money involved, the level of difficulty of the case, and this Court's own knowledge and experience, *see Tuthill v. Sw. Pub. Serv. Co.*, 614 S.W.2d 205, 212–13 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.) (articulating the factors a court should consider in making an award of attorney's fees), the Court finds RCH's requested $121,668.70 fee award is excessive. This was not a complex or difficult case, it implicated a relatively small amount of money, and it required a minimal expenditure of time and effort by counsel for RCH—the only motions filed were the cross-motions for summary judgment which resolved the case, the parties appeared before the Court only once, and only two depositions were taken.

Additionally, RCH's requested attorney's fees appear to be based on hourly rates ranging from $400 to $695 per hour although the median hourly rate for an oil and gas specialist in the Austin area is approximately $247 per hour,[2] and all of the time records submitted by RCH in support of its request are redacted, so it is not possible for the Court to ascertain how much time was spent on any particular task, or even what tasks were actually performed. Finally, the Court notes while RCH properly won the day, RCH's profoundly sloppy record-keeping was the soil that brought

---

[2] *See* STATE BAR OF TEXAS, 2013 HOURLY RATE FACT SHEET 10, https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=27264.

this dispute to blossom.  The Court therefore awards RCH a total of $35,000 in attorney's fees, inclusive of expenses.

**Conclusion**

Accordingly:

IT IS ORDERED that Defendant Royalty Clearinghouse, Ltd.'s Motion for Attorney's Fees [#44] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the _2nd_ day of December 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE